## DEWEY'S EXECUTORS *vs.* RUGGLES.

1. A charge of all testator's debts and funeral and testamentary expenses upon all his estate, real and personal, not otherwise specifically bequeathed, is equivalent to a trust for sale of all the real and personal estate not otherwise specifically bequeathed, for the purpose of paying those debts and expenses; and the executor's deed therefor will pass to the purchaser, both the legal and the equitable estate.

2. The general rule is, that a purchaser is not bound to see to the application of the purchase money when the testator's debts are charged generally upon his estate. There are exceptions to it, where there is a breach of trust by the executors, and the purchaser is a party to it, and where the purchase is after the institution of a suit which takes the administration of the estate out of the hands of the trustee. There is no such allegation here.

On final hearing on bill and demurrer.

*Mr. McGill,* for complainant.

*Mr. Lippincott,* for defendant.

THE CHANCELLOR.

Catalina Dewey, the testatrix, died April 17th, 1871. By her last will and testament, dated August 17th, 1870, she appointed her son-in-law David Young, and her son Samuel Dewey, executors and trustees thereof. By a codicil made a few days afterwards, she appointed her daughter Catalina, executrix and trustee with her son and son-in-law. By the first section of the will, she directs her executors and trustees to pay all her debts, funeral and testamentary expenses, as soon as may conveniently be done after her decease, and charges with the payment of those debts and expenses, all her estate, real and personal, not therein otherwise specifically bequeathed. After bequeathing her household furniture, pictures and silver to her daughter Catalina, she gives all the rest, residue and remainder of her estate, both real and personal, not thereinbefore disposed of, to her children, to be divided into five equal parts or shares, to be distributed and retained in trust by her executors in the manner thereinafter directed, that is to say: one-fifth part to be paid to her daughter Catalina, another to be paid to her daughter Helen, another to be paid to her son Samuel, another to be invested and held in trust by her executors or the survivor of them, for the benefit of her son, John V. D. Dewey and his children, to whom she bequeaths that part or share, after his death, directing that he have the annual interest and profits thereof, for his life. The other fifth is to be invested and held in trust in like manner by the executors or the survivor of them, for the benefit of her son, A. Reed Dewey, the annual interest and income to be paid to him by them or the survivor of them, for his life, and after his death, the share to be "paid and transferred to his heirs-at-law, him surviving." The testatrix requests that in case of the return of her son Horatio, her "children or heirs surviving, pay to him individually the sum of $1000 each," and she directs that the debts due her from her five children to whom the shares are given, shall be taken into and constitute part of the residue, and that they

Dewey's Executors *v.* Ruggles.

shall be charged to and be reckoned as part of their respective shares. At her death, she was seized of two lots of land in Jersey City. The complainants, on the 4th day of March, 1872, entered into an agreement in writing with the defendant, by which they agreed to sell and convey this property to him at a price therein named, and he, on his part, agreed with them to buy it of them accordingly. The defendant, not being satisfied that the complainants could make a good title to him for the premises, refused to comply with his agreement, and the bill in this cause was therefore filed against him to compel a specific performance. The defendant demurred on the ground of want of equity.

The question presented is simply whether the complainants have power under the will to sell the premises. The case is free from allegation that the executors, in selling, are committing a breach of trust, or that the purchaser has reason to believe that they are doing so, or that the debts and expenses charged upon the land are all paid, or that the purchaser even has reason to doubt whether they are not all paid. The complainants insist that they have power to sell under the will, and base their claim on the first section, by which the debts, funeral and testamentary expenses, are charged on the whole of the testatrix's real and personal estate, except the household furniture, pictures and silver, which are specifically given to her daughter Catalina, and expressly excepted by the will from that charge.

This charge is equivalent to a trust for sale of all the real and personal estate, with the exception referred to, for the purpose of paying those debts and expenses. *Bateman* v. *Bateman*, 1 *Atk.* 421; *Ball* v. *Harris*, 3 *Jur.* 141; *S. C.*, 4 *My. & Cr.* 268; *Story's Eq. Jur.*, § 1131; *Elliot* v. *Merryman*, *Lead. Ca. in Eq.* 45, *and notes*; *Gardner* v. *Gardner*, 3 *Mason* 178, 219, 220; *Andrews* v. *Sparhawk*, 13 *Pick.* 393; *Shaw* v. *Borrer*, 1 *Keen* 559; *Sugd. on Vend.* 660.

The executors have power to sell, and the purchaser who takes title from them will not be bound to see to the application of the purchase money—that is to say, their deed will

pass to him both the legal and the equitable estate. The general rule is, that a purchaser is not bound, where the debts are charged generally, to see to the application of the purchase money. There are exceptions to it, where there is a breach of trust by the executor and the purchaser is a party to it, and where the purchase is after the institution of a suit which takes the administration of the estate out of the hands of the trustee.

There will be a decree for specific performance.